TUCKER ELLIS LLP
Brian K. Brookey - SBN 149522
brian.brookey@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:    213.430.3400
Facsimile:    213.430.3409

OF COUNSEL:
COOPER & DUNHAM LLP
Robert T. Maldonado (to be admitted *pro hac vice*)
Rmaldonado@cooperdunham.com
Tonia A. Sayour (to be admitted *pro hac vice*)
Eric M. Eisenberg (to be admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  212. 278.0509
Facsimile:  212. 391.0525

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCG CHARACTERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>TELEBRANDS CORP., TELEBRANDS CORPORATION, and AJIT KHUBANI,<br><br>Defendants. | Case No. 2:15-cv-00374 DDP (AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO /FED. R.CIV.P. 12(b)(6)**<br><br>DATE:  June 15, 2015<br>TIME:   10:00 a.m.<br>CTRM:  3<br><br>Hon. Dean D. Pregerson |

# **TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................... 2

III. ARGUMENT .............................................................................................. 4

    A. GENERAL PRINCIPLES OF LAW ............................................... 4

        1. Standard for Granting a Motion to Dismiss ......................... 4

        2. Design Patent Infringement-Specific Law ........................... 6

        3. Trade Dress-Specific Law ..................................................... 7

    B. SCG'S FIRST CLAIM FOR RELIEF (INFRINGEMENT OF FOUR DESIGN PATENTS) SHOULD BE DISMISSED BECAUSE OF INADEQUATE SIMILARITY TO THE ACCUSED BALL PET PRODUCTS ............................................. 9

    C. SCG'S SECOND CLAIM FOR RELIEF (UNREGISTERED PRODUCT TRADE DRESS INFRINGEMENT AND DILUTION) SHOULD BE DISMISSED BECAUSE (1) SCG HAS NOT PLEADED AND CANNOT PROVE THAT ITS ALLEGED PRODUCT TRADE DRESS IS NON-FUNCTIONAL AND (2) THE ALLEGED PRODUCT TRADE DRESS IS INDEFINITE .................................................. 11

        1. Failure to Plead Non-Functionality .................................... 11

        2. Failure to Clearly Articulate Trade Dress ........................... 13

    D. SCG'S THIRD CLAIM FOR RELIEF (UNFAIR COMPETITION) SHOULD BE DISMISSED BECAUSE IT RELIES UPON THE INADEQUATELY PLED CLAIMS FOR DESIGN PATENT INFRINGEMENT AND TRADE DRESS INFRINGEMENT .......................................................... 14

IV. CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Abrego Abrego v. The Dow Chem. Co.*,
   443 F.3d 676, 681 (9th Cir. 2006) ............................................................................6

*Anderson v. Kimberly-Clark Corp.*,
   570 Fed.Appx. 927, 932 (Fed. Cir. 2014) ...........................................................6, 10

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937, 1949-50 (2009) ...........................................................................4, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (1955) ...................................................................................................9

*Colida v. Nokia, Inc.*, ............................................................................................7, 10
   347 Fed.Appx. 568 (Fed. Cir. 2009)

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ............................................................................7, 10

*Leatherman Tool Grp. V. Cooper Indus.*,
   199 F.3d 1009 (9th Cir. 1999) ............................................................................8, 12

*Legler v. Exxel Outdoors, Inc.*,
   2014 WL 3727566 at *1 (E.D. Wis. July 29, 2014) ...............................3, 6, 7, 10

*Marder v. Lopez*,
   450 F.3d 445, 448 (9th Cir. 2006) ............................................................................6

*OddzOn Products, Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ................................................................................6

*Parrino v. FHP, Inc.*,
   146 F.3d 699, 705-06 (9th Cir. 1998) ......................................................................6

*Qualitex Co. v. Jacobson Products Co., Inc.*,
   514 U.S. 159 (1995) ...................................................................................................8

*Salt Optics, Inc. v. Jand, Inc.*,
   No. SACV 10-0828 DOC, 2010 WL 4961702, at *4 (C.D. Cal. Nov. 19, 2010) ......9, 14

*Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*,
   668 F.3d 677 (9th Cir. 2012) .........................................................................8, 11, 12

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
   No. C04-1664 SBA, 2004 WL 2496163, at *3 (N.D. Cal. Nov. 5, 2004) .........8, 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 ..............................................................................................................6

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002) ............................................................................8, 12

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2001) .......................................... 8, 12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) .................................................................................................... 7

*Twombly* and *Ashcroft. Ashcroft*,
  129 S.Ct. 1949 ........................................................................................................ 9, 11

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
  529 U.S. 205 (2000) ................................................................................................. 7, 8

*Yurman Design, Inc. v. PAJ, Inc.*,
  262 F.3d 101 (2d Cir. 2001) ....................................................................................... 7

*Zodiac Pool Sys., Inc. v. Aquastar Pool Products, Inc.*,
  No. 13CV343-GPC WMC, 2013 WL 690616, at *4 (S.D. Cal. Feb. 22, 2013) ........ 8, 12

**Statutes**

15 U.S.C. § 1125(a) ........................................................................................................ 7

15 U.S.C. § 1125(a)(3) ............................................................................................... 8, 11

15 U.S.C. § 1125(c)(4) .................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 2, 9

Fed.R.Civ.P 12(b)(6) ................................................................................................... 1, 5

Defendants, Telebrands Corp. and Telebrands Corporation (collectively, "Telebrands")[1] hereby submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P 12(b)(6) for failure to state a claim upon which relief may be granted.

## I. INTRODUCTION

This design patent and trade dress infringement action concerns products that are transformable toy characters. Plaintiff SCG Characters LLC ("SCG") alleges that it has a line of "Popples transformable toys," which are, as shown in the asserted design patents, puffy-cheeked characters having three stalks on the top of their head, a long thin tail, and a repeated shape (flowers, stars, hearts and/or circles/whirls – depending on the particular "Popple") in numerous bodily locations including on the end of each of the three head-stalks, on the end of the tail, and on the ears. The Popples have a built-in sack into which they can be partially stuffed, such that their head pokes out of the sack. When the sack is not being used for this purpose, it is held on the Popple's back (like a backpack). The Popples characters were developed and sold in the 1980s.

Defendant Telebrands marketed and sold a line of BALL PETS products, which are cartoonish versions of common real and fantasy animals such as puppies, kitties, bears, unicorns,[2] and dragons. The BALL PETS products, which look very different than the "Popples" products, can fold (at the neck) into a nearly perfectly spherical ball, so that children can play with them both as a character and as a ball.

This case involves assertions by SCG of intellectual property infringement, and unfair competition predicated on this intellectual property infringement, by Defendants. SCG asserts three claims for relief in its Complaint (Dkt. 1): (1) design patent infringement of four asserted design patents; (2) trade dress infringement and dilution; and (3) unfair competition, predicated on the alleged intellectual property infringement.

However, by simply viewing the asserted design patents and the accused products,

---

[1] The correct corporate name for Telebrands is "Telebrands Corp.," not "Telebrands Corporation."

[2] SCG referred to the unicorn as a "Rhino." (Dkt. 1, pg. 5.)

1

it becomes clear that there is no design patent infringement as a matter of law. SCG has also failed to plead that its trade dress is non-functional, and also failed to clearly articulate what constitutes its trade dress. The unfair competition claim for relief, which simply piggy-backs on the design patent and trade dress claims for relief, fails to state a claim for the same reasons. Because all of these "claims for relief" fail to state a claim as a matter of law, Telebrands moves to dismiss all counts of the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   FACTUAL BACKGROUND

The four asserted design patents – U.S. Patent Nos. D468,372 (the "Flower Patent") (Exhibit 1, hereto), D468,781 (the "Star Patent") (Exhibit 2), D469,479 (the "Heart Patent") (Exhibit 3) and D484,927 (the "Circle Patent") (Exhibit 4) – were filed with the United States Patent and Trademark Office on November 29, 2001. The claimed ornamental designs show numerous features not found in the accused BALL PETS products ("Accused Products"). For example, as set out in the below chart, at least the following features are present in the design patents, but not in the Accused Products:

| Flower Patent (Exhibit 1) | Star patent (Exhibit 2) | Heart Patent (Exhibit 3) | Circle Patent (Exhibit 4) | Accused Products (*See* Complaint ¶¶ 11, 18) |
|---|---|---|---|---|
| Hemispherical puffy cheeks | Hemispherical puffy cheeks | Hemispherical puffy cheeks | Hemispherical puffy cheeks | *No special cheek structure.* |
| Heart-shaped ears | Heart-shaped ears | Heart-shaped ears | Heart-shaped ears | *Ears in various shapes, none of which are heart-shaped.* |
| Flower shapes on each of (1) three long thin stalks extending from the top of the head, (2) each ear, (3) the nose, (4) each hand, (5) the top left of the chest, (6) each | Star shapes on each of (1) three long thin stalks extending from the top of the head, (2) each ear, (3) each hand, (4) the top left of | Heart shapes on each of (1) three long thin stalks extending from the top of the head, (2) each ear, (3) the nose, (4) each hand, (5) the top left of the chest, | Circular shapes on each of three long thin stalks extending from the top of the head; a combination of small circular and large "whirl" | *No long thin stalks extending from the head (the unicorn has a single large conical horn and the dragon has two small conical horns, none of which have any other shape attached);* |

2

| | | | | |
|---|---|---|---|---|
| foot, (7) a long thin tail, and (8) a built-in sack, held on the back, into which the character can be partially "stuffed"[3] | the chest, (5) each foot, (6) a long thin tail, and (7) a built-in sack, held on the back, into which the character can be partially "stuffed" | (6) each foot, (7) a long thin tail, and (8) a built-in sack, held on the back, into which the character can be partially "stuffed" | shapes on each ear; a circular nose; a large number of threads on the end of a long, thin tail which form a roughly spherical shape; a built-in sack, held on the back, into which the character can be partially "stuffed" | *No shapes on the ear; No corresponding shapes on the nose; Hands and feet contain only "paw" shapes ("claw" shapes for the dragon); No shape at the top left of the chest; No tail; No sack.* |
| Eyebrows | Eyebrows | Eyebrows | Eyebrows | *No eyebrows* |
| Three eyelashes per eye | Three eyelashes per eye | Three eyelashes per eye | Three eyelashes per eye | *No eyelashes* |
| A circular shape on the chest | A circular shape on the chest | A circular shape on the chest | A circular shape on the chest | *A heart-shape on the chest.* |

All of the features of the four design patents are shown in solid lines, indicating the design patent includes these features as part of the overall claimed design, except for a patch of hair on the top of the head of the Circle Patent design, which is shown in "broken lines … for illustrative purposes only and form[ing] no part of the claimed design." *See Legler v. Exxel Outdoors, Inc.*, 2014 WL 3727566 at *1 (E.D. Wis. Jul. 29, 2014) (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002).

A number of prior art references were cited to or by the United States Patent and

---

[3]   In each of the asserted design patents (Exhibits 1-4), when the Popple is stuffed into the sack, the Popple's head still pokes out of this sack. *See* Fig. 8. When the sack is not in use, it is held on the Popple's back (like a backpack). *See* Figs. 3-5. The Accused Products, on the other hand, do not have sacks, but instead fold at the neck such that they from a nearly-perfect sphere / ball. *See* Exhibit 12.  The feature of rolling a toy up into a ball is functional, not ornamental. *See* Section III(C)(i).  Even though this feature is functional and cannot be protected by design patents, Telebrands includes consideration of the particular appearance and orientations of the sack in the asserted design patents for purposes of this motion to dismiss because they appear in solid (non-broken) lines in the design patents. (*See* Section 3(A)(ii), *citing Legler* at *1.)

3

Trademark Office during prosecution of the various design patents, including, *inter alia*, D288,583 (Exhibit 5), D290,981 (Exhibit 6), D277,021 (Exhibit 7), D282,946 (Exhibit 8), D277,124 (Exhibit 9) and D318,311 (Exhibit 10). Like the Accused Products, these prior art design patents differed from the claimed designs in that they (1) had differently-shaped or positioned cheeks, (2) had differently-shaped, more realistic ears (very much like those of the accused bear and kitty), (3) had arbitrary patterns repeated on a smaller number of body parts, (4) lacked stalks extending from the top of the head, (5) had a large heart centered on the chest (in the case of Exhibits 5 and 9), (6) lacked a long thin tail, and (7) lacked eyebrows (in the case of Exhibit 10). Like the Accused Products, one item of prior art (Exhibit 10) can be both posed sitting with its legs extended forward and its hands up and to the sides (Exhibit 10 at Fig. 1), and also posed in the form of a near-perfect sphere (Exhibit 10 at Fig. 8).

Also cited was U.S. Patent Number 4,614,505 ("the '505 patent") (Exhibit 11), which is a utility patent with the same assignee as the asserted design patents (Those Characters from Cleveland, Inc. of Cleveland, Ohio). The '505 patent shows and claims the feature, shared with the asserted design patents, of a built-in sack into which the character can be partially "stuffed."

SCG claims that its alleged trade dress is "the ability for the character to transform into a ball toy; the use of brightly colored fur and exaggerated anatomical features; the use of contrasting color pads on the feet, hands, and ears; and the exclamatory posture when the toy is in the open position." (Complaint ¶ 18).

**III. ARGUMENT**

    **A.    GENERAL PRINCIPLES OF LAW**

        **1.    Standard for Granting a Motion to Dismiss**

The standard for granting a motion to dismiss was explained in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009):

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

4

> Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555. . . .Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

"In evaluating a Rule 12(b)(6) motion, a court may rely on documents outside of the pleadings if they are integral to the plaintiff's claims and their authenticity is not disputed." *Anderson v. Kimberly-Clark Corp.*, 570 Fed.Appx. 927, 932 (Fed. Cir. 2014), *citing Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.

5

2006). "The court may also rely on matters subject to judicial notice." *Id.*, *citing Swartz v. KPMG LLP*, 476 F.3d 756, 763. Accordingly, a court may rely on patents and patent applications. *Id.* at 932 and n.3, *citing Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) and *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993). A court may rely on photographs of the accused products. *Id.* at 932, *citing Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Likewise, a court may rely on side-by-side comparisons in the complaint of accused products with design patents. *Legler v. Exxel Outdoors, Inc.*, 2014 WL 3727566 at *1 (E.D. Wis. July 29, 2014), *citing Anderson.*

## 2.     Design Patent Infringement-Specific Law

"In determining whether an accused product infringes a patented design, we apply the ordinary observer test, that is, whether an ordinary observer familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer." *Anderson,* 570 Fed. Appx. at 933 (Fed. Cir. 2014) (citations and internal quotation marks omitted). Where "differences are markedly apparent," the plaintiff cannot "state a plausible claim for why the ordinary observer would be deceived into believing that the [accused] products were the same as the patented design." *Id.* (affirming dismissal of design patent infringement claim).

A design patent protects only non-functional, ornamental features of the claimed design. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (scope of design patent properly limited "to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball.") However, for purposes of a motion to dismiss due to non-infringement of a design patent, a design patent owner may not seek to exclude from the comparison, on functionality grounds, dissimilar design patent features that are shown in solid (non-broken) lines. *Legler* at *1, *citing Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378

(Fed. Cir. 2002).

Courts frequently grant motions to dismiss design patent claims under Rule 12(b)(6) or 12(c), after conducting a visual review of the asserted design patent(s) and the accused products and finding dissimilarity. *See e.g. Anderson v. Kimberly-Clark Corp.*, 570 Fed.Appx.927 (Fed. Cir. 2014); *Colida v. Nokia, Inc.*, 347 Fed.Appx. 568 (Fed. Cir. 2009); *Legler v. Exxel Outdoors, Inc.*, 2014 WL 3727566, (E.D. Wis. July 29, 2014); *Young v. Stone*, 2014 WL 4271624 (N.D. Ill. Aug. 28, 2014); *MSA Products, Inc. v. Nifty Home Products, Inc.*, 883 F.Supp.2d 535 (D.N.J. 2012); *Parker v. Kimberly-Clark Corp.*, 2012 WL 74855 (N.D. Ill. Jan. 10, 2012).

It is particularly appropriate to dismiss a claim for design patent infringement where the accused product is no more similar to the asserted claimed design than it is to prior art to that claimed design. *Legler* at *4-*5, *citing Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 682 (Fed. Cir. 2008).

### 3.     Trade Dress-Specific Law

Count II of the Complaint purports to state a claim for trade dress infringement, but fails to do so. Trade dress protection is based upon Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). The limits of trade dress protection, however, are not unbounded. To be protectable, a trade dress must not only be non-functional, but it must also be distinctive and defined. *Wal-Mart*, 529 U.S. at 210. Trade dress most often has protected the packaging for goods, but it also has been held to protect the decor of a restaurant, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992), and certain non-functional product configurations. *Wal-Mart*, 529 U.S. at 209. Courts have exercised "particular 'caution,' when extending protection to product designs … [which] 'almost invariably … is intended not to identify the source' of the product, 'but to render the product itself more useful or more appealing.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (*citing Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1987) and *Wal-Mart*, 529 U.S. at 213) ("granting trade dress protection to an

ordinary product design would create a monopoly in the goods themselves," which is outside the ambit of trade dress protection). Moreover, while some trade dresses, such as packaging, may be inherently distinctive, other trade dresses, such as colors and **product configurations**, can never be inherently distinctive, and can only be protected upon a showing of secondary meaning. *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162-63 (1995); *Wal-Mart,* 529 U.S. at 212-216. In this case, SCG has failed to state a claim for trade dress infringement, at least because it is not alleged that its trade dress is non-functional or any facts to support a finding of non-functionality, and it has not clearly articulated its trade dress.

A plaintiff must plead the non-functionality of its alleged unregistered trade dress to state a viable claim, consistent with its burden of proof on this issue. *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C04-1664 SBA, 2004 WL 2496163, at *3 (N.D. Cal. Nov. 5, 2004) (dismissing claim for trade dress infringement because of failure "to allege or plead nonfunctionality"); 15 U.S.C. § 1125(a)(3); 15 U.S.C. § 1125(c)(4); *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012), *citing* 15 U.S.C. § 1125(a)(3). Where alleged trade dress pertains to the configuration of a product, a plaintiff must show that the entire design is non-functional. *Secalt*, 668 F.3d at 683, *citing Leatherman Tool Grp. V. Cooper Indus.*, 199 F.3d 1009, 1012 (9th Cir. 1999) and *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir. 2002). This burden is impossible to meet where, for example, "the whole [of the asserted trade dress] is nothing other than the assemblage of functional parts … designed to result in superior performance." *Id.* at 684, *quoting Leatherman,* 199 F.3d at 1013.

In assessing whether alleged trade dress features are functional, a prior utility patent "has vital significance" and "is strong evidence that the features therein claimed are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 121 S. Ct. 1255, 1260, 149 L. Ed. 2d 164 (2001)*; Zodiac Pool Sys., Inc. v. Aquastar Pool Products, Inc.*, No. 13CV343-GPC WMC, 2013 WL 690616, at *4 (S.D. Cal. Feb. 22, 2013).

8

"A plaintiff must clearly articulate its claimed trade dress to give a defendant sufficient notice" and avoid dismissal. *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *4 (C.D. Cal. Nov. 19, 2010) (granting motion to dismiss trade dress infringement claim due to inadequate articulation).

## B. SCG'S FIRST CLAIM FOR RELIEF (INFRINGEMENT OF FOUR DESIGN PATENTS) SHOULD BE DISMISSED BECAUSE OF INADEQUATE SIMILARITY TO THE ACCUSED BALL PET PRODUCTS

Plaintiff SCG asserts four design patents, each claiming "the ornamental design for a transformable toy figure, as shown and described [in these various design patents]" against Telebrands' BALL PETS products. As can be seen from the images of the Accused Products in the Complaint (¶¶ 11, 18), there is little similarity between the asserted patents (Exhibits 1-4) and the Accused Products. SCG has accordingly not plausibly pled design patent infringement, and Telebrands' motion to dismiss this First Claim for Relief under 12(b)(6), Fed. R. Civ. P. should be granted.

The factual matter in the complaint, even if accepted as true, does not state a claim for design patent infringement that is plausible on its face, as required by *Twombly* and *Ashcroft*. *Ashcroft*, 129 S.Ct. at 1949, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1955). There is no possibility that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the Accused Products (*See* Complaint ¶¶ 11, 18) are the same as any of the asserted patented designs (Exhibits 1-4). In short, the patented designs show puffy-cheeked creatures with unnatural features like a trio of stalks growing out of their heads, particular unnatural patterns (flowers, stars, hearts, and circles/spheres/whirls) repeated in numerous locations, and a sack, held on the back, that can partially hold this creature up to its neck[4]; the Accused Products are simply cartoonish animals (puppies, kitties, bears, unicorns,[5] and dragons) that can fold up into a near-perfect sphere that children can use as a ball.

Numerous claimed features of the patented designs are not present in the Accused

---

[4]   *See* n. 3 regarding this sack.
[5]   SCG refers to the BALL PETS unicorn as a "Rhino". *See* Complaint at ¶ 11.

9

Products, as shown in the above chart in Section II. These markedly apparent differences show that the claimed design and the accused design are sufficiently distinct such that SCG has not met, and cannot meet, its burden of proving the two designs would appear substantially the same to an ordinary observer. *Anderson* at 933 (Fed. Cir. 2014). Moreover, SCG has not provided any explanation, beyond the pictures at Complaint ¶ 11, as to how the Accused Products incorporate these features or the patented designs. *See Colida* at *570-71 (affirming dismissal and finding claims objectively baseless where plaintiff "states nothing about how the accused phone . . . bears this [patented] design or anything remotely similar to it"). The absence of certain of the claimed design features in the Accused Products makes for a very different design. For example, the repetition of a particular theme (flowers, stars, hearts or circles/spheres/whirls) in many different locations, including, amongst other locations, at three long thin stalks on the top of the head and at the end of a long thin tail, and on the ears, is missing in the Accused Products.[6] These themes certainly are not *repeated* in the Accused Products. Moreover, the Accused Products completely lack the three long thin stalks at the top of the head and any tail whatsoever. The design patent applicant claimed these features as part of the claimed design, and SCG cannot ignore them.

It is particularly appropriate to dismiss the design patent infringement claim for relief as a three-way comparison (Exhibit 12) of the asserted design patents, the Accused Products, and cited prior art to the asserted design patents, shows that the Accused Products are visually closer to the prior art than to the asserted designs. *Legler* at *4-*5, *citing Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 682 (Fed. Cir. 2008). These similarities to the cited art include, *inter alia*, the positioning of a large heart on the center of the chest, the shape of the ears, the overall shape and posture of the figure and the use of dark lines on a snout projection to show the mouth (as well as the shared lack of numerous features found in the patented designs and discussed in the above chart). The

---

[6] The large heart shape centered on the chest of the Accused Products is a feature shown in several pieces of cited prior art (*See* Exhibits 5 and 9). While certain of the Accused Products have a "paw print" on each of four paws, this nod to realism contrasts sharply with the use of an arbitrary theme (flowers, stars, *etc.*) in numerous locations for each of the design patents.

Accused Products are also closer to the prior art than to the patented design in that they can fold into a ball shape approximating a sphere, as opposed to being partially stuffed, up to the neck, into a sack which is otherwise held on the creature's back.[7]

Accordingly, the first claim for relief should be dismissed.

### C. SCG'S SECOND CLAIM FOR RELIEF (UNREGISTERED PRODUCT TRADE DRESS INFRINGEMENT AND DILUTION) SHOULD BE DISMISSED BECAUSE (1) SCG HAS NOT PLEADED AND CANNOT PROVE THAT ITS ALLEGED PRODUCT TRADE DRESS IS NON-FUNCTIONAL AND (2) THE ALLEGED PRODUCT TRADE DRESS IS INDEFINITE

#### 1. Failure to Plead Non-Functionality

To state a viable claim for trade dress infringement, SCG must, consistent with its ultimate burden of proof, plead, *inter alia*, that its unregistered trade dress is non-functional. *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C04-1664 SBA, 2004 WL 2496163, at *3 (N.D. Cal. Nov. 5, 2004) (dismissing claim for trade dress infringement because of failure "to allege or plead nonfunctionality"); *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012), *citing* 15 U.S.C. § 1125(a)(3). SCG has not done so. It has merely stated that "[t]he function of the iconic Popples trade dress design is to identify SCG as the source of its products/services and to establish a symbol of quality and goodwill that consumers can trust." Complaint at ¶ 20. Assuming *arguendo* that this statement somehow related to non-functionality, it would be the sort of "naked assertion" of non-functionality "devoid of further factual enhancement" held in *Ashcroft* and *Twombly* to be insufficient to "state a claim for relief that is plausible on its face." Notably, the statement does not address any particular element or combination of elements of the asserted trade dress, and does not address how such element(s) affect or do not affect the functionality, quality or performance of the toy.

Any attempt at amendment by SCG to allege non-functionality will be futile, as its alleged trade dress is clearly functional. Because SCG's alleged trade dress pertains to the configuration of a product, it must show that the entire design is non-functional.

---

[7] *See* n. 3 regarding this sack.

*Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012), *citing Leatherman Tool Grp. V. Cooper Indus.*, 199 F.3d 1009, 1012 (9th Cir. 1999) and *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir. 2002). However, SCG cannot do so, as "the whole [of the asserted trade dress] is nothing other than the assemblage of functional parts … designed to result in superior performance." *Id* at 684, *quoting Leatherman* at 1013.

SCG's alleged trade dress is "the ability for the character to transform into a ball toy; the use of brightly colored fur and exaggerated anatomical features; the use of contrasting color pads on the feet, hands, and ears; and the exclamatory posture when the toy is in the open position." Telebrands will address each element in turn.

"The ability for the character to transform into a ball toy" is functional on its face, because it (1) allows for the toy to be played with both as a stuffed animal and as a ball, and (2) selectively hides the character so that children can be amused by the character appearing and disappearing. The utilitarian advantages of this feature are discussed at length, and claimed, in expired U.S. Patent No. 4,614,505 (Exhibit 11), which, like the asserted design patents, was assigned to Those Characters from Cleveland, Inc. of Cleveland Ohio; this establishes the functionality of this feature. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 121 S. Ct. 1255, 1260, 149 L. Ed. 2d 164 (2001) ("A prior patent, we conclude, has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional . . . The rule we have explained bars the trade dress claim, for MDI did not, and cannot, carry the burden of overcoming the strong evidentiary inference of functionality based on the disclosure of the [feature] in the claims of the expired patents"); *Zodiac Pool Sys., Inc. v. Aquastar Pool Products, Inc.*, No. 13CV343-GPC WMC, 2013 WL 690616, at *4 (S.D. Cal. Feb. 22, 2013).

"The use of brightly colored fur and exaggerated anatomical features" again increase the functionality of the toy. Bright colors increase the visibility of the toy, so it is more easily found and more attention-getting. "Exaggerated anatomical features"

appears to be a fancy way of saying that the body is not perfectly proportionate, but few, if any, toy stuffed animals are, as can be seen for example in the cited prior art attached as Exhibits 5-11. The "exaggerations" in the image of the "Popple" shown at ¶ 18 of the Complaint, as well as in the design patents, serve to make them more huggable, cuddly, and expressive – clearly beneficial features in a children's toy.

"The use of contrasting color pads on the feet, hands, and ears" is again functional, as it increases the visibility of the location of these appendages, so that a child can more readily appreciate the position of the character, even from a distance, and appreciate, even from a distance, that the toy represents a character. Contrasting, that is, differently, colored pads on the feet, hands, and ears (and/or other features to attract attention to these body parts) are apparent in the cited prior art (Exhibits 5-10)

"The exclamatory posture when the toy is in the open position" serves to add excitement to the toy, a useful thing in a children's toy. Again, exclamatory posture is a common feature in the cited prior art (Exhibits 5-10).

As all of the features of the alleged trade dress increase the utility of the children's toy, SCG has not, and cannot, plausibly plead that its entire unregistered product trade dress is non-functional. The second claim for relief should be dismissed for at least this reason.

### 2. Failure to Clearly Articulate Trade Dress

In addition, SCG has failed to clearly articulate its trade dress. "The ability for the character to transform into a ball toy" is indefinite because, in context, it is not clear what sort of shape constitutes a "ball." SCG's "Popple" character, as evidenced by the various asserted design patents, does not transform into anything approaching a "ball" or "sphere", but rather transforms into a character whose head sticks out of an irregularly-shaped sack. No picture is included in the complaint of a "Popple" transformed into any compacted shape. Accordingly, it is not possible to know what sort of "ball" is referred to in the alleged trade dress.

"The use of brightly colored fur and exaggerated anatomical features" is likewise

13

indefinite. Neither the color, the brightness, the degree or type of exaggeration, or the particular features which are exaggerated, are identified. Accordingly, it is not possible to ascertain the scope of this feature of the alleged trade dress.

"The use of contrasting color pads on the feet, hands, and ears" is again indefinite, particularly in context. The "Popple" shown at ¶ 18 of the Complaint[8] does not have any contrasting color pad on the ears, but rather has one completely pink ear and one completely blue ear. Moreover, the pad on the foot of the Popple is a pink which appears to be roughly the same pink as the rest of the foot. Accordingly, it is again not possible to ascertain the scope of this feature of the alleged trade dress.

"The exclamatory posture when the toy is in the open position" is again indefinite. It is not clear which orientations of a stuffed animal convey exclamation, as opposed to other emotions. For example, the "Popple" shown at ¶ 18 of the Complaint may just as well be showing an indifferent "shrug" as an "exclamatory posture." Again, it is not possible to ascertain the scope of this feature of the alleged trade dress.

The difficulties in ascertaining the scope of each feature of the alleged trade dress only compound when attempting to determine the scope of the trade dress as a whole. Telebrands cannot meaningfully respond to the allegations without a clear articulation of trade dress, as SCG was required to provide. *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *4 (C.D. Cal. Nov. 19, 2010) ("A plaintiff must clearly articulate its claimed trade dress to give a defendant sufficient notice.") (granting motion to dismiss trade dress infringement claim due to inadequate articulation).

Accordingly, the second claim for relief should be dismissed for this additional reason.

D. **SCG'S THIRD CLAIM FOR RELIEF (UNFAIR COMPETITION) SHOULD BE DISMISSED BECAUSE IT RELIES UPON THE INADEQUATELY PLED CLAIMS FOR DESIGN PATENT INFRINGEMENT AND TRADE DRESS INFRINGEMENT**

SCG's third claim for relief for unfair competition arises from the same set of facts

---
[8] This Popple appears to have a different design than those in the asserted design patents.

underlying its claims for design patent and trade dress infringement. *See* Complaint at ¶ 27 ("Through [Telebrands'] infringement of SCG's Patents and trade dress rights . . .").[9] Accordingly, for the reasons set forth above, this unfair competition claim should therefore be dismissed.

## IV. CONCLUSION

The Complaint should be dismissed, with prejudice, for failure to state any claim upon which relief may be granted. Amendment would be futile, as a quick visual inspection of the asserted design patents and Accused Products shows non-infringement, and as the asserted trade dress is not only inadequately articulated, but also functional.

DATED: April 27, 2015                    Tucker Ellis LLP


                                         By:  /s/Brian K. Brookey
                                              Brian K. Brookey
                                              Attorneys for Defendants

---

[9] SCG's allegation that "Telebrands' advertisements, marketing materials, strategy, and marketing representations have unfairly competed with plaintiff . . ." (Complaint at ¶ 28) is a mere legal conclusion that the Court need not accept as true under the *Ashcroft / Twombly* framework.

15