TUCKER ELLIS LLP
Brian Brookey (SBN 149522)
515 South Flower Street
Los Angeles, California 90071
Telephone: (213) 430-3377
Facsimile: (213) 430-3409
Email: brian.brookey@tuckerellis.com

OF COUNSEL:
COOPER & DUNHAM LLP
Robert T. Maldonado (admitted *pro hac vice*)
Tonia A. Sayour (admitted *pro hac vice*)
Eric M. Eisenberg (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 278-0509
Facsimile: (212) 391-0525
Email: Rmaldonado@cooperdunham.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCG CHARACTERS LLC, <br><br> Plaintiff, <br><br> v. <br><br> TELEBRANDS CORP., TELEBRANDS CORPORATION, and AJIT KHUBANI, <br><br> Defendants. | Case No. 2:15-cv-00374 DDP (AGRx) <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO Fed.R.Civ.P 12(b)(6)** <br><br> DATE: June 15, 2015 <br> TIME: 10:00 a.m. <br> CTRM: 3 <br><br> DATE: June 15, 2015 <br> TIME: 10:00 a.m. <br> CTRM: 3 <br><br> Hon. Dean P. Pregerson |

# Table of Contents

Page

I. INTRODUCTION ................................................................................................ 1

II. SCG'S DESIGN PATENT INFRINGEMENT CLAIM SHOULD BE DISMISSED ................................................................................................ 1

    A. COURTS MAY COMPARE THE PATENTED DESIGN AND THE ACCUSED PRODUCTS IN GRANTING A MOTION TO DISMISS A DESIGN PATENT INFRINGEMENT CLAIM ............................................................. 2

    B. ADDITIONAL, NOT-YET-IDENTIFIED PRIOR ART WILL NOT RENDER SCG'S DESIGN PATENT INFRINGEMENT CLAIM PLAUSIBLE ............................................................................. 3

    C. TELEBRANDS' IDENTIFIED PRIOR ART PATENTS, CITED DURING PROSECUTION, APPEARING ON THE FACE OF THE DESIGN PATENTS, AND READILY ACCESSIBLE THROUGH THE UNITED STATES PATENT OFFICE'S WEBSITE, ARE AVAILABLE TO THIS COURT ............................................................................. 4

III. SCG'S TRADE DRESS CLAIM SHOULD BE DISMISSED ............... 6

    A. SCG'S ASSERTED TRADE DRESS -- INCLUDING ITS "APPEARANCE" -- IS FUNCTIONAL ...................................... 6

    B. SCG HAS NOT CLEARLY ARTICULATED A TRADE DRESS .............................................................................................. 9

IV. CONCLUSION ............................................................................................. 14

## Table of Authorities

**Page**

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 Fed.Appx. 927 (Fed. Cir. 2014)) ............................................................... 1, 2, 4

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
--- F.3d ----, 2015 WL 2343543, at *4-*5 (Fed. Cir. May 18, 2015) ............................. 7

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001) ............................................................... 11, 12

*Colida v. Nokia, Inc.*,
347 Fed.Appx. 568 (Fed. Cir. 2009) ............................................................... 2, 3

*Deckers Outdoor Corporation v. J.C. Penney Company Inc.*,
45 F. Supp.3d 1181 (C.D. Cal. 2014) ............................................................... 1, 2, 3

*Dreikorn v. Barlow*,
214 U.S.P.Q. 632, 1981 WL 46263 at *3-*4
(Com'r Pat. & Trademarks Aug. 17, 1981) ............................................................... 5

*Hoganas AB v. Dresser Indus., Inc.*,
9 F.3d 948, 954 n. 27 (Fed. Cir. 1993)) ............................................................... 4

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ............................................................... 6

*Legler v. Exxel Outdoors, Inc.*,
2014 WL 3727566 at *4-*5) ............................................................... 1, 4

*Lepton Labs, LLC v. Walker*,
55 F.Supp.3d 1230 (C.D. Cal. 2014) ............................................................... 9, 11, 12, 13

*Mattel, Inc. v. MGA Entertainment, Inc.*,
782 F.Supp.2d 911, 1006-7 (C.D. Cal. 2011) ............................................................... 7

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764, 777 (9th Cir. 2002) ............................................................... 5

*Qualitex v. Jacobson Products Co., Inc.*,
514 U.S. 159, 162-63 (1995) ............................................................... 6

*Salt Optics, Inc. v. Jand, Inc.*,
No. SACV 10-0828 DOC, 2010 WL 4961702,
at *4 (C.D. Cal. Nov. 19, 2010) ............................................................... 9, 13

*Taco Cabana International, Inc. v. Two Pesos, Inc.*,
932 F.2d 1113 (5th Cir. 1991) ............................................................... 6, 13, 14

*The Jumpitz Corp. v. Viacom Intern., Inc.*,
97 U.S.P.Q.2d 2002, 2010 WL 3238953, at *6-*8 (S.D. Cal. Aug. 13, 2010) ............ 7, 8

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  121 S.Ct. 1255 (2001) .................................................................................................. 7, 9

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
  529 U.S. 205 (2000) ........................................................................................................ 6

*Weber-Stephen Products LLC v. Sears Holding Corp.*,
  2013 WL 5782433, at *4 and n.3 (N.D. Ill. Oct. 25, 2013) ........................................... 13

**Statutes**

Lanham Act ............................................................................................................................. 7

**Rules**

F.R.E. Rule 201 ...................................................................................................................... 5

F.R.E. Rule 902(5) .................................................................................................................. 5

## I. INTRODUCTION

Plaintiff SCG Characters LLC's ("SCG") opposition (Dkt. 31) fails to substantively dispute Defendant Telebrands' analysis showing that (1) the four patented designs and the accused products are "sufficiently distinct" and have "differences [that] are markedly apparent" such that the SCG cannot "state a plausible claim for why the ordinary observer would be deceived into believing that the [accused] products were the same as the patented design[s]" (*See Anderson v. Kimberly-Clark Corp.*, 570 Fed.Appx. 927, 933 (Fed. Cir. 2014)); and (2) the accused products are no more similar to the four patented designs than they are to prior art to those patented designs (*See Legler v. Exxel Outdoors, Inc.*, 2014 WL 3727566 at *4-*5). For this reason alone, the design patent infringement claim should be dismissed.

Similarly, with respect to its trade dress claim, SCG has not cited any allegation of non-functionality in its pleading, or any facts supporting non-functionality. Moreover, SCG has cited no authority for the proposition that the lack of articulation of its trade dress cannot be decided on a motion to dismiss. The cases hold otherwise. Since SCG has not pled non-functionality or facts supporting non-functionality, and has not articulate its trade dress with sufficient specificity to put Telebrands on notice, its trade dress claim also should be dismissed.

Finally, since SCG's unfair competition claim piggybacks on its design patent infringement and trade dress infringement claims, that claim also should be dismissed.

SCG's Complaint should be dismissed in its entirety.[1]

## II. SCG'S DESIGN PATENT INFRINGEMENT CLAIM SHOULD BE DISMISSED

SCG argues that (1) based on *Deckers Outdoor Corporation v. J.C. Penney Company Inc.*, 45 F. Supp.3d 1181 (C.D. Cal. 2014), it is inappropriate in evaluating a motion to dismiss to even look at the patented designs or the accused products, as SCG must do no more than "set forth its patents, and identif[y] the products that infringe them"

---

1   Telebrands notes that SCG has not sought leave to re-plead.

(Dkt. 31 at 1-2, 3); (2) it is inappropriate to grant a motion to dismiss because there may exist additional, as-of-yet-unidentified prior art that could somehow rehabilitate SCG's design patent infringement claims (Dkt. 31 at 1, 2); and (3) the prior art United States patents cited during prosecution of the design patents, appearing on the face of these design patents (and readily available from the United States Patent Office's website), are not properly before this Court (Dkt. 31 at 2-3). Each of these arguments fails as a matter of law.

## A. COURTS MAY COMPARE THE PATENTED DESIGN AND THE ACCUSED PRODUCTS IN GRANTING A MOTION TO DISMISS A DESIGN PATENT INFRINGEMENT CLAIM

SCG's position is that a plaintiff, by simply identifying a design patent and an accused product, no matter how dissimilar, has necessarily pled a plausible claim for design patent infringement. This position, which would allow for the owner of any design patent to force the manufacturer of any product whatsoever to submit to discovery, is clearly contrary to law. *Anderson v. Kimberly-Clark Corp.*, 570 Fed.Appx. 927, 931-934 (Fed. Cir. 2014) (affirming judgment on the pleadings of no design patent infringement where district court "properly concluded that 'plain differences' exist between the accused products and the patented design.") (applying same test as motion to dismiss and applying Ninth Circuit law); *Colida v. Nokia, Inc.*, 347 Fed.Appx. 568 (Fed. Cir. 2009) (affirming motion to dismiss design patent infringement claim in light of differences). SCG has not distinguished this circuit level authority in its Opposition, but instead relies on a single district court case, which does not stand for the proposition for which SCG cites it.

SCG's reliance on *Deckers Outdoor Corporation v. J.C. Penney Company Inc.*, 45 F. Supp.3d 1181, is misplaced. In *Deckers*, the district court did perform a visual comparison of the design patents and the accused products, and found that this "comparison of the protected designs with the accused products demonstrates a sufficient visual similarity to at least render infringement of the '189 Patent plausible." 45

F.Supp.3d at 1186-87 (including visual comparison in the decision). A close inspection of the *Deckers* visual comparison shows that the '189 design patent asserted in that case and the accused boot were rather similar, with the various claimed features of the design patents being matchable to near-identical and/or roughly visually corresponding features in the accused products. *Id.* at 1187. Thus, *Deckers* does not stand for the proposition that a plaintiff only needs to plead a patent and an accused product to survive a motion to dismiss. In the instant case, Telebrands' analysis shows the numerous plain differences between the asserted design patents and the accused products, which SCG has not refuted. Apparently, SCG believes that it can open the doors to discovery with no consideration of similarity of the accused products to the asserted design patents. This is not in accordance with the case law.

### B.  ADDITIONAL, NOT-YET-IDENTIFIED PRIOR ART WILL NOT RENDER SCG'S DESIGN PATENT INFRINGEMENT CLAIM PLAUSIBLE

Citing no authority, SCG argues that the finite number of prior art references identified by Telebrands is less than the "entire universe of prior art," apparently implying that there can be no proper evaluation of design patent infringement by an observer "familiar with the prior art," unless he considers *all* prior art. (Dkt. 31 at 1, 3). This argument fails for a number of reasons.

As discussed above and in Telebrands' Opening Brief (Dkt. 20), motions to dismiss based on design patent non-infringement have been appropriately granted on numerous occasions. SCG distinguishes none of these cases. In every such situation, less than the "entire universe" of possible prior art has necessarily been before the Court. Indeed, the Federal Circuit has affirmed dismissal of a design patent infringement claim, on a motion to dismiss, because "the dissimilarities far exceed the similarities . . . and no amount of extrinsic evidence can change that." *Colida*, 347 Fed.Appx. at 571 (Fed. Cir. 2009).

A motion to dismiss a design patent infringement claim can even be granted

without any recourse to the prior art. *Anderson*, 570 Fed. Appx. at 933 (Fed. Cir. 2014) ("In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer.") (citation and internal quotation marks omitted) (affirming dismissal for design patent noninfringement based on differences between design patent and accused product).

Moreover, where prior art is consulted in connection with the design patent infringement question, the prior art is ***not*** used to support a finding of design patent infringement. Rather, prior art is used to ***narrow*** the scope of the design patent. *Legler v. Exxel Outdoors, Inc.*, 2014 WL 3727566 at *4-*5 (E.D. Wis. July 29, 2014) (granting motion to dismiss design patent infringement claim because scope of design patent could not encompass accused products that looked more similar to prior art designs). SCG makes no argument as to how the as-of-yet-unidentified prior art could *enlarge* the scope of its design patents. Thus, additional as-of-yet-unidentified prior art would not be helpful to SCG's design patent infringement claim.

### C. TELEBRANDS' IDENTIFIED PRIOR ART PATENTS, CITED DURING PROSECUTION, APPEARING ON THE FACE OF THE DESIGN PATENTS, AND READILY ACCESSIBLE THROUGH THE UNITED STATES PATENT OFFICE'S WEBSITE, ARE AVAILABLE TO THIS COURT

Although, as discussed above, this Court could grant Telebrands' motion to dismiss without consulting Telebrands' identified prior art patents (Exhibits 5-11 to Opening Brief, referenced in the three-way chart presented as Exhibit 12), the prior art patents are available to this Court. *Anderson*, 570 Fed. Appx. 933, n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications.") (*citing Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993)); *Legler*, 2014 WL 3727566 at *1 (E.D. Wis. July 29, 2014) ("The Court can also take judicial notice of the [asserted design] patent *and the prior art referenced*

*therein.*") (emphasis added) (citations omitted). All of Telebrands' identified prior art patents are referenced on the face of the asserted design patents (Exhibits 1-4). They are also readily available government publications, accessible, *inter alia*, on the United States Patent Office's website.[2]

SCG argues that the prior art patents are unauthenticated, but does not make any argument as to how they could possibly be inaccurate or inauthentic. In any event, the patents are publications of the United States government (a public authority), and purport on their face to be issued by that public authority. They are thus self-authenticating. F.R.E. Rule 902(5); *Dreikorn v. Barlow*, 214 U.S.P.Q. 632, 1981 WL 46263 at *3-*4 (Com'r Pat. & Trademarks Aug. 17, 1981). The portion of *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002) relied on by SCG did not involve a publication, but rather a private memorandum and/or letter, and is thus readily distinguishable. Further, SCG's assertion that "no request for judicial notice has been made" is both beside the point where Telebrands has included self-authenticating government publications as exhibits to its Opening Brief, as well as inaccurate. *See* Opening Brief at 6 ("The court may also rely on matters subject to judicial notice . . . Accordingly, a court may rely on patents and patent applications.") Moreover, F.R.E. Rule 201 provides that the "court may judicially notice a fact [such as the identified prior art patents] that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," such as the United States Patent Office's website. F.R.E. Rule 201 further provides that "[t]he court: . . . may take judicial notice on its own; or . . . must take judicial notice if a party requests it and the court is supplied with the necessary information . . . [and] may take judicial notice at any stage of the proceeding." To the extent required for their consideration, and to the extent the

---

[2] *See* http://pdfpiw.uspto.gov/.piw?Docid=D0288583 (Exhibit 5); http://pdfpiw.uspto.gov/.piw?Docid=D0290981 (Exhibit 6); http://pdfpiw.uspto.gov/.piw?Docid=D0277021 (Exhibit 7); http://pdfpiw.uspto.gov/.piw?Docid=D0282946 (Exhibit 8); http://pdfpiw.uspto.gov/.piw?Docid=D0277124 (Exhibit 9); http://pdfpiw.uspto.gov/.piw?Docid=D0318311 (Exhibit 10); and http://pdfpiw.uspto.gov/.piw?Docid=46114505 (Exhibit 11).

Court may believe that Telebrands has not already done so, Telebrands hereby requests that the court take judicial notice of the United States patents submitted as exhibits to Telebrands' Opening Brief.

### III. SCG'S TRADE DRESS CLAIM SHOULD BE DISMISSED

#### A. SCG'S ASSERTED TRADE DRESS -- INCLUDING ITS "APPEARANCE" -- IS FUNCTIONAL

SCG cites various paragraphs of its Complaint as allegedly pleading non-functionality of its asserted trade dress. (Dkt. 31 at 4-5). However, these paragraphs speak to inherent distinctiveness[3], fame, source identification and/or secondary meaning, not non-functionality. Distinctiveness and non-functionality are two **separate** requirements for trade dress, *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993), and cannot be merged into one, as SCG has attempted to do. SCG has admittedly not pled non-functionality, and, for that reason alone, its trade dress claim should be dismissed.

The bulk of SCG's trade dress argument is directed not to whether non-functionality has been pled (it has not), but rather, to the factual finding of whether its trade dress is indeed non-functional.[4] Thus, SCG proceeds to argue, by analogy to the trade dress in *Taco Cabana International, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113 (5th Cir. 1991) that its asserted trade dress is necessarily non-functional because the trade dress pertains to an "appearance." However, the specific asserted trade dress in that case included numerous visual features – "artifacts . . . paintings . . . murals . . . stepped exterior . . . top border paint . . . neon stripes" -- that did not serve a function or which a competing Mexican restaurant could easily design around without being put at a

---

[3] Product configuration trade dress can never be inherently distinctive. *Qualitex v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162-63 (1995); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).

[4] Telebrands addressed the factual issue of functionality in its Opening Memorandum in the context of the futility of any proposed amendment. (Dkt. 20 at 11-13.) However, since SCG has not sought leave to re-plead, the Court need not consider futility.

6

significant non-reputational disadvantage. As the Supreme Court has instructed: "a feature is . . . functional . . . when it affects the . . . quality of the device. . . . It is proper to inquire into a significant non-reputation-related disadvantage in cases of esthetic functionality." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 121 S.Ct. 1255, 1261-62 (2001) (internal citations and quotation marks omitted). Moreover, it is well-established that purely "appearance"-based trade-dress features can be functional, particularly where the trade dress is appealing to children. *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 1006-7 (C.D. Cal. 2011) (various kinds of packaging trade dress were functional because they increased visibility of the children's toys inside, and alternatively because they were "aesthetically functional" in that they were "aesthetically pleasing to children") (internal citations omitted); *The Jumpitz Corp. v. Viacom Intern., Inc.*, 97 U.S.P.Q.2d 2002, 2010 WL 3238953, at *6-*8 (S.D. Cal. Aug. 13, 2010) (trade dress in "visual system" incorporating "use of bright, fun colors and whimsical, playful shapes" was functional as it was an "attempt to appeal to children" and allowing protection would "stifle competitors in the field of children's entertainment in a way not contemplated by the Lanham Act"); *Apple Inc. v. Samsung Electronics Co., Ltd.*, --- F.3d ----, 2015 WL 2343543, at *4-*5 (Fed. Cir. May 18, 2015) (finding entire trade dress, which included features of "a row of small dots on the display screen, a matrix of colorful square icons with evenly rounded corners within the display screen, and an unchanging bottom dock of colorful square icons with evenly rounded corners set off from the display's other icons," to be functional, because in the Ninth Circuit, "in order to establish non-functionality, the party with the burden must demonstrate that the product feature serves *no purpose* other than identification") (emphasis in original) (applying Ninth Circuit law).

As detailed in Telebrands' Opening Brief (Dkt. 20), each of the features of SCG's asserted trade dress serves purposes other than identification, and, thus, SCG cannot meet its burden as a matter of law under controlling Ninth Circuit authority. *Apple*, 2015 WL 2343543, at *4-5. The claimed features of SCG's design patents make the children's toys

both more appealing to children (SCG even admits that they "serve to make Popples visually appealing" (Dkt. 31 at 7)) and more usable as children's toys. Not using the features of the asserted trade dress in the accused products would put Telebrands at a significant non-reputation-related disadvantage and stifle competition in children's toys. To design around the trade dress as asserted (and as best understood by Telebrands), Telebrands could not sell a children's toy that could be used both as a stuffed animal and as a ball.[5] Or Telebrands would need to use dull-colored fur, or perfectly proportioned, non-cartoonish animals, or reserved, non-expressive posture, or single-colored, relatively non-visible, feet, hands, and ears. Telebrands could not use features that would make its toys more appealing to children. It cannot seriously be contended that these changes—all of which would make Telebrands' toy less fun, less attractive to children, less expressive and/or less capable of functioning as a children's toy—would not put Telebrands at significant non-reputation-related disadvantage.

SCG next relies on a straw man argument that "[u]nder Telebrands' paradigm of functionality, only those things that make a product's appearance *less* appealing could be protected." (Dkt. 31 at 7). This is not Telebrands' position. Where a product feature can be replaced with a non-infringing alternative, which alternative feature has the same non-reputation-related advantages, then that product feature may form a part of a nonfunctional trade dress. But SCG has defined the elements of its trade dress so broadly that it cannot point to any such non-infringing alternative features having the same non-reputation-related advantages. *See Jumpitz*, 2010 WL 3238953, at *8 ("Allowing Viacom to assert a protectable interest in its broadly defined 'visual system' would stifle competitors in the field of children's entertainment in a way not contemplated by the Lanham Act.")

SCG's decision to instead articulate a trade dress so broad as to encompass any

---

[5] SCG admits that the element of the asserted trade dress of "the ability for the character to transform into a ball toy" has functional implications. (Dkt. 31 at 6). Whether or not it is that "function that makes it part of the trade dress" is in no way relevant to the determination of whether or not the trade dress is functional.

8

potentially competitive transformable children's toy that is appealing to children means that competitors would be placed at a significant, non-reputation-related disadvantage if trade dress protection were afforded as SCG desires. Accordingly, under *TrafFix*, SCG's articulated trade dress is functional.

### B. SCG HAS NOT CLEARLY ARTICULATED A TRADE DRESS

SCG argues that the ambiguities in its asserted trade dress are excusable because Telebrands is allegedly merely "feigning that it is not on notice of the nature of SCG's claims." (Dkt. 31 at 7-8). However, when it comes to trade dress, more is required than bare notice of the general nature of the claims. Rather, a "plaintiff must *clearly articulate* its claimed trade dress to give a defendant sufficient notice" and avoid a dismissal. *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *4 (C.D. Cal. Nov. 19, 2010) (emphasis added) (granting motion to dismiss trade dress infringement claim due to inadequate articulation). Telebrands cited authority for this proposition (Dkt. 20 at 14), which SCG has not distinguished.

The cases SCG cites do not show that SCG's has "clearly articulate[d]" its trade dress for purposes of avoiding a motion to dismiss.

In *Lepton Labs, LLC v. Walker*, 55 F.Supp.3d 1230, 1240 (C.D. Cal. 2014), the plaintiff survived a motion to dismiss because it "alleged a complete recitation of the *concrete* elements of its alleged trade dress." (emphasis added). The plaintiff did so by using clear language to describe the elements of its trade dress, in conjunction with providing a collection of side-by-side photographs which precisely clarified these elements. This was not done by SCG. Below are the side-by-side photographs from *Lepton Labs*:

9

# Figure 1

# Figure 2

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

# Figure 3



With such context, the elements of the trade dress (e.g. "light blue background with clouds behind the logo"; "light blue and orange color schematic"; [the particular stolen] "before and after comparison photographs"; [the particular stolen] "comparison chart") were sufficiently concrete. *Id. at* 1239-40.

Importantly, the *Lepton* Court noted a number of situations in which trade dress would *not* be adequately articulated. The plaintiff in *Lepton* articulated its trade dress with an exhaustive list of nine features that together encompassed at least the lion's share of the overall appearance of its website. The Court thus denied the motion to dismiss even though "a plaintiff [cannot] only list some elements of a website's design among many and claim that those features establish the site's look and feel." *Id* at 1239. As discussed above in Section II(A), SCG has set out a trade dress that is extremely broad, relative to its Popples designs, claiming very few of the Popples' features. SCG also claims these few features broadly and ambiguously.

SCG also cites *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001), for the proposition that "[t]rade dress is the composite tapestry of visual

effects. Courts have repeatedly cautioned that, in trademark—and especially trade-dress—cases, the mark must be examined as a whole, not by its individual constituent parts." The *Clicks Billiards* decision did not address whether or not the plaintiff had clearly or adequately articulated its trade dress. Thus, the decision is not relevant here. In fact, the *Lepton* court expressly found that this precise language from *Clicks Billiard* is irrelevant to the articulation inquiry:

> But in order to evaluate a plaintiff's trade-dress tapestry, one must first apprise herself of the elements comprising the trade dress. For example, while the Coca–Cola Company might be able to colloquially describe its well-known trade dress as simply its contour bottle design, a court would require much more to satisfy even Rule 8's lenient pleading standard. Coca–Cola might describe its trade dress as a contoured glass or plastic bottle having a plurality of vertical striations extending from the top to the bottom of the bottle and being interrupted by a smooth, horizontal band nearly half way down the bottle. While this description undoubtedly involves a cataloging of elements, those elements put one on notice that Coca–Cola would claim the overall appearance of the bottle as its trade dress. It would be strange for a court to fault Coca–Cola for providing a detailed description of its bottle in pleading alleged trade-dress infringement, for if Coca–Cola did not provide such a description, its theoretical trade-dress claim would likely fail for vagueness.

*Id.* at 1240. SCG cannot simply analogize its broad and vague trade dress elements to the concrete website design elements in *Lepton Labs* or to the concrete elements of the Coca-Cola bottle design.

SCG also selectively quotes *Lepton Labs* to imply that the question of clear articulation of trade dress should not be addressed until a "later stage of the litigation." On the contrary, the *Lepton* Court did address the articulation of trade dress at this stage, and further stated that "a plaintiff cannot adopt a shifting-sands approach to pleading its trade dress." *Id.* SCG's apparent position that it can wait until later in this litigation to clearly articulate a trade dress is not supported by *Lepton*. *See also Salt Optics*, 2010 WL 4961702, at *4 (C.D. Cal. Nov. 19, 2010) ("A plaintiff must clearly articulate its claimed trade dress to give a defendant sufficient notice") (granting motion to dismiss trade dress infringement claim due to inadequate articulation).

SCG's footnote to the Northern District of Illinois *Weber-Stephen* decision (Dkt. 31 at 9, n.3) is also unavailing. The *Weber-Stephen* Court attempted to save the plaintiff's trade dress allegations by narrowly construing them in terms of concrete and specific trade dress elements shown in both product photographs and patent figures. Specifically, "(1) the metal bands bordering the edges of the grill shroud and doors [as shown in both the product photographs and the patent figures] and (2) any metal rivets on top of those bands [again as shown in both the product photographs and the patent figures]"). *Weber-Stephen Products LLC v. Sears Holding Corp.*, 2013 WL 5782433, at *4 and n.3 (N.D. Ill. Oct. 25, 2013). Only if the plaintiff were willing to accept this narrow trade dress construction could would the complaint be sufficient. *Id* at n.3. Any attempt by SCG to save its trade dress allegations in this manner would be futile, as the features shown in both the Popple photograph (Dkt. 1, ¶ 18) and the asserted design patents (*Id.*, Exhs. 1-4) -- hemispherical puffy cheeks, heart-shaped ears, long thin tail with shape at the end -- are not present in the accused products.

SCG's reliance on the trade dress from *Two Pesos* is likewise misplaced. Neither the Supreme Court nor the Fifth Circuit were presented with, or discussed, whether the *Two Pesos* trade dress was clearly or adequately articulated by the plaintiff. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); 932 F.2d 1113 (5th Cir. 1991). *Two*

*Pesos* is therefore irrelevant to whether SCG's Complaint should be dismissed for inadequate articulation of trade dress.

## IV. CONCLUSION

As SCG's arguments are unavailing for the above reasons, SCG's complaint should be dismissed with prejudice for the reasons discussed in Telebrands' Opening Brief.

Dated: June 1, 2015　　　　　　　　　　TUCKER ELLIS LLP


By:/s/ Brian Brookey
BRIAN BROOKEY
Attorney for Defendants

14

1080104.1