1

2

3                                                              O

4

5

6

7                                                    NO JS-6

8

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13  SCG CHARACTERS LLC,              )  Case No. CV 15-00374 DDP (AGRx)
                                     )
14               Plaintiff,          )  **ORDER GRANTING DEFENDANT**
                                     )  **TELEBRANDS CORP.'S MOTION TO**
15       v.                          )  **DISMISS PURSUANT TO FED. R. CIV.**
                                     )  **P. 12(b)(6) AND GRANTING**
16  TELEBRANDS CORP., TELEBRANDS     )  **DEFENDANT AJIT KHUBANI'S MOTION**
    CORPORATION, and AJIT            )  **TO DISMISS PURSUANT TO FED. R.**
17  KHUBANI,                         )  **CIV. P. 12(b)(6) AND 12(b)(2)**
                                     )
18               Defendants.         )  [Dkt. Nos. 19, 23]
    _____    )
19

20       Presently before the Court are Defendants Telebrands Corp.

21  ("Telebrands")[1] and Telebrands Corporation's Motion to Dismiss

22  Pursuant to Fed. R. Civ. P. 12(b)(6).  Also before the Court is

23  Defendant Ajit Khubani ("Khubani")'s Motion to Dismiss Pursuant to

24  Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(2).  Having

25  considered the parties' submissions and heard oral argument, the

26  _____

27       [1] SCG has named both "Telebrands Corp." and "Telebrands
    Corporation" as defendants in this suit.  However, Defendants aver
28  that these two names refer to the same entity, and that the correct
    name of the entity is "Telebrands Corp."  The Court will refer to
    "Telebrands" as one entity in this order, with the understanding
    that it refers to both of the aforementioned named defendants.

1   Court GRANTS Defendant Khubani's motion, GRANTS Defendant

2   Telebrands' motion, and adopts the following order.

3   **I.   BACKGROUND**

4        Plaintiff SCG Characters LLC ("SCG") is a Los Angeles-based

5   company that owns all intellectual property rights associated with

6   the Popples line of transformative toys ("Popples").   Complaint

7   ("Compl."), Dkt. No. 1, ¶¶ 5, 10.   Telebrands is a telemarketing

8   company headquartered in New Jersey.   Id. ¶ 6.   Telebrands sells

9   numerous products across the United States; in particular,

10  Telebrands designs, produces, and sells a line of "Ball Pets"

11  transformable toys.   Id. ¶¶ 6-7, 11.   Khubani, a citizen and

12  resident of New Jersey, is the owner, Chief Executive Officer, and

13  President of Telebrands.   Id. ¶ 8.

14       SCG has filed suit against Telebrands and Khubani

15  (collectively, "Defendants"), alleging that the "Ball Pets" toys

16  are knockoffs of the Popples design.   Id. ¶ 13.   SCG alleges that

17  the Popples enjoy widespread fame in the toy market; that the

18  design is iconic; and that Popples have been promoted in the media,

19  in their own television series, and in the Popples comic book,

20  since the 1980s.   Id. ¶¶ 13, 19-20. SCG owns four design patents

21  for the Popples toys.   Id. ¶ 10 & Exh. A.   SCG alleges that

22  Defendants, in designing, making, using, offering for sale, and

23  selling the "Ball Pets," have infringed, and will continue to

24  infringe, SCG's patents.

25       SCG further alleges that Popples have "a unique and inherently

26  distinctive combination of visual features" that make up an

27  "iconic" trade dress.   Id. ¶ 18.   SCG alleges that Telebrands'

28  "Ball Pets" are a knockoff product and that they are "confusingly

1   similar" to Popples.  <u>Id.</u> ¶ 20.  SCG alleges that the "Ball Pets"

2   infringe SCG's trade dress because they lead consumers to believe

3   the "Ball Pets" are associated with SCG.  <u>Id.</u>  SCG also alleges

4   that the presence of the "Ball Pets" knockoff in the marketplace

5   "dilutes the distinctively quality of the Popples trade dress."

6   <u>Id.</u>

7        SCG brings three causes of action against Defendants: (1)

8   patent infringement under 35 U.S.C. § 271, et seq., (2) trade dress

9   infringement and dilution, and (3) unfair competition.  Khubani has

10  moved to dismiss the claims against him for failure to state a

11  claim and for lack of personal jurisdiction.  Dkt. No. 19.

12  Telebrands has moved to dismiss the Complaint for failure to state

13  a claim.  Dkt. No. 23.

14  **II.  LEGAL STANDARD**

15       **A.  12(b)(2)**

16       Federal Rule of Civil Procedure 12(b)(2) provides that a court

17  may dismiss a suit for lack of personal jurisdiction.  The

18  plaintiff has the burden of establishing that jurisdiction exists.

19  <u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where,

20  as here, the motion is based on written materials rather than an

21  evidentiary hearing, "the plaintiff need only make a prima facie

22  showing of jurisdictional facts."  <u>Caruth v. International</u>

23  <u>Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1977); <u>Pebble</u>

24  <u>Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Although

25  the plaintiff cannot simply rest on the bare allegations of its

26  complaint, uncontroverted allegations in the complaint must be

27  taken as true."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d

28  797, 797 (9th Cir. 2004) (internal quotations and citation

3

1    omitted).  Conflicts between parties over statements contained in
2    affidavits must be resolved in the plaintiff's favor.  Id.

3        District courts have the power to exercise personal
4    jurisdiction to the extent authorized by the law of the state in
5    which they sit.  Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P.
6    v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  Because
7    California's long-arm statute authorizes personal jurisdiction
8    coextensive with the Due Process Clause of the United States
9    Constitution, see Cal. Civ. Code § 410.10, this Court may exercise
10   personal jurisdiction over a nonresident defendant when that
11   defendant has "at least 'minimum contacts' with the relevant forum
12   such that the exercise of jurisdiction 'does not offend traditional
13   notions of fair play and substantial justice.'"  Schwarzenegger,
14   374 F.3d at 800-01 (citing Int'l Shoe Co. v. Washington, 326 U.S.
15   310, 316 (1945)).  The contacts must be of such a quality and
16   nature that the defendants could reasonably expect to be "haled
17   into court there."  World-Wide Volkswagen v. Woodson, 444 U.S. 286,
18   297 (1980).

19       There are two types of personal jurisdiction: general and
20   specific.  Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th
21   Cir. 1995).  A court may exercise general personal jurisdiction
22   over a defendant when the defendant's contacts are "so continuous
23   and systematic as to render them essentially at home in the forum
24   state."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct.
25   2846, 2851 (2011) (internal quotations omitted).

26       Specific personal jurisdiction may be found when the cause of
27   action arises out of the defendant's contact or activities in the
28   forum state.  See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th

                                    4

Cir. 1991).  The Ninth Circuit has set forth the following three-pronged test to determine whether specific personal jurisdiction exists: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1986).  If the plaintiff succeeds in establishing the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the court's assertion of jurisdiction would be unreasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

**B.  Rule 12(b)(6)**

A 12(b)(6) motion to dismiss requires the court to determine the sufficiency of the plaintiff's complaint and whether or not it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

5

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561–63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  When dismissing a claim, a court should grant leave to amend unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997).

///

1   ///

2   ///

3   **III.  DISCUSSION**

4       **A.  Personal Jurisdiction over Khubani**

5       Under the "fiduciary shield" doctrine, a court cannot exercise

6   personal jurisdiction over a non-resident corporate officer of a

7   corporation, even if the court has jurisdiction over the

8   corporation, if the officer's activities were performed solely in

9   his corporate or employment capacity.  See Calder v. Jones, 465

10  U.S. 783, 790 (1984); Davis v. Metro Productions, Inc., 885 F.2d

11  515, 520 (9th Cir. 1989); Forsythe v. Overmyer, 576 F.2d 779, 783

12  (9th Cir. 1978).  The doctrine acts to shield an individual from

13  being hailed into court merely due to that person's association

14  with a corporation that has caused injury in the forum state.

15  Instead, a plaintiff bringing a claim against an individual officer

16  must prove that the court has an independent basis to exercise

17  jurisdiction over the officer.  Davis, 885 F.2d at 520.  Thus, a

18  court cannot find purposeful availment exists unless the plaintiff

19  establishes that: (1) the corporation is the agent or alter ego of

20  the individual; or (2) the individual had control of, and directly

21  participated in, the alleged activities.  Wolf Designs, Inc. v. DHR

22  Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).  In the latter

23  case, the primary inquiry is whether the individual was a "primary

24  participant" or "guiding spirit" in the alleged wrongdoing directed

25  at the form state.  Id. (finding purposeful availment when the

26  President and sole owner of a company had "final say" with respect

27  to the company's policies); see also Advanced Skin and Hair, Inc.

28  v. Bancroft, 858 F. Supp. 2d 1084, 1090 (C.D. Cal. 2012) (finding

7

1   purposeful availment where defendant, the founder and CEO of a

2   company, did not explicitly deny that she directed the sales,

3   manufacturing, marketing, advertising, and distribution of the

4   alleged infringing products); Allstar Marketing Group, LLC v. Your

5   Store Online, LLC, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009)

6   (finding purposeful availment where the two managing members and

7   only employees of a company did not offer evidence to rebut

8   plaintiffs' allegations that the defendants participated in and

9   encouraged the alleged activities).

10       Khubani argues that the claims against him should be dismissed

11   for failure to state a claim and for lack of personal jurisdiction.

12   However, Khubani's arguments - that SCG cannot show that Telebrands

13   is the alter ego of Khubani and that Khubani was personally

14   involved in the alleged wrongdoing - both go to the question of

15   personal jurisdiction.  Khubani submitted an affidavit that he was

16   not personally involved in the design, production, or sale of the

17   accused "Ball Pets" product in California.  Dkt. No. 36-1, ¶¶ 5-11.

18       In the Complaint, SCG alleges that Khubani - as the owner,

19   Chief Executive Officer, and President of Telebrands - oversees the

20   day-to-day operations of Telebrands.  Compl. ¶ 8.  SCG further

21   alleges that Khubani "personally acted, approved, or ratified each

22   of the wrongful acts" alleged in the Complaint.  Id.  SCG, in its

23   Opposition and in its Sur-Reply, appears to argue that the Court

24   has personal jurisdiction over Khubani due to his personal

25   involvement in the alleged wrongful activity, but does not argue

26   that Khubani is the alter ego of Telebrands.  SCG argues that

27   Khubani personally participated in the wrongful activity because he

28   approved the "Ball Pets" designs and directed that the "Ball Pets"

1    should be advertised and sold nationwide, including in California.

2    See Sur-Reply, Dkt. No. 40, at 7.

3        Although the Court should accept a plaintiff's factual

4    allegations as true for the purposes of a Rule 12(b)(2) motion, it

5    can only do so if the facts are not directly controverted.  Doe v.

6    Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Here, Khubani has

7    submitted an affidavit stating that he was not personally involved

8    in the design, production, or sale of the accused "Ball Pets"

9    products in California.  Dkt. No. 36-1 ¶¶ 5-11.  SCG has not

10   presented any affidavits of its own.  The Complaint alleges

11   generally that Khubani is responsible for day-to-day operations and

12   that he personally approved or ratified the wrongful acts alleged;

13   these allegations are too conclusory and insufficient to show

14   Khubani was the "guiding spirit" or "primary participant" behind

15   the allegedly infringing activities.  In its Sur-Reply, SCG

16   presents evidence that Khubani hears pitches from inventors and

17   judges whether TeleBrands should market and sell the proposed

18   products.  However, there is no evidence that Khubani solicited or

19   personally approved the deal for "Ball Pets."  The only specific

20   evidence that links "Ball Pets" to Khubani is: (1) a picture of

21   Khubani with "Ball Pets", and (2) a statement in a newspaper

22   interview with Khubani, where Khubani mentions that TeleBrands will

23   launch its infomercials and sales of three products, including the

24   "Ball Pets" product.  This evidence does not show that Khubani

25   personally approved the "Ball Pets" deal or that he personally

26   approved marketing of "Ball Pets" in California.  The Court

27   concludes that SCG has not met its burden to establish that the

28   Court has personal jurisdiction over Khubani.  Accordingly, it will

9

1  GRANT Khubani's motion to dismiss for lack of personal

2  jurisdiction.

3        **B.  Claims against Telebrands**

4        SCG asserts three causes of action against Telebrands: (1)

5  patent infringement, (2) trade dress infringement and dilution, and

6  (3) unfair competition.  Telebrands move to dismiss all three for

7  failure to state a claim.

8              1.  Patent Infringement Claim

9        SCG owns four design patents: US D468,372; US D468,781 S; US

10  D4690,479 S; and US D484,927 S.  Compl. ¶ 10 & Exh. A.  SCG

11  alleges that Telebrands' line of "Ball Pets" toys infringes on

12  these four design patents.  Id.; see also Compl. at 4-5 (depicting

13  diagrams of the design patents and photographs of the accused

14  infringing products).

15        A design patent is limited in scope to the novel, ornamental

16  features of the patented design. OddzOn Products, Inc. v. Just

17  Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).  A patented

18  design is infringed whenever the patented design, or "any colorable

19  imitation thereof," is applied "to any article of manufacture for

20  the purpose of sale."  35 U.S.C. § 289.  In determining whether an

21  accused product infringes a patented design, courts apply the

22  "ordinary observer" test, which asks whether "an ordinary observer,

23  familiar with the prior art designs, would be deceived into

24  believing that the accused product is the same as the patented

25  design." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303

26  (Fed. Cir. 2010) (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543

27  F.3d 665, 678 (Fed. Cir. 2008) (en banc)).  "In some instances, the

28  claimed design and the accused design will be sufficiently distinct

1   that it will be clear without more that the patentee has not met

2   its burden of proving the two designs would appear 'substantially

3   the same' to the ordinary observer." Egyptian Goddess, 543 F.3d at

4   678.  In certain instances, the patented design and the accused

5   design "will be sufficiently distinct that it will be clear without

6   more" that the patentee cannot satisfy the ordinary observer test;

7   in other instances, where the designs are not plainly dissimilar

8   the analysis "will benefit from a comparison of the claimed and

9   accused designs with the prior art." Id.

10      As an initial matter, the Court takes judicial notice of the

11   design patents and the images of the accused products included in

12   SCG's Complaint.  SCG argues that the Court may not take judicial

13   notice of these items, as they are unauthenticated and no request

14   for judicial notice has been made.  However, in its consideration

15   of a motion to dismiss, a court may consider the allegations on the

16   face of the complaint (including documents attached thereto),

17   matters which are properly judicially noticeable, and "documents

18   whose contents are alleged in a complaint and whose authenticity no

19   party questions, but which are not physically attached to the

20   pleading." Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994),

21   overruled on other grounds by Galbraith v. County of Santa Clara,

22   307 F.3d 1119 (9th Cir. 2002); see also Harris v. Amgen, Inc., 770

23   F.3d 865, 874 (9th Cir. 2014) ("[C]ourts must consider the

24   complaint in its entirety, as well as other sources courts

25   ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

26   in particular, documents incorporated into the complaint by

27   reference, and matters of which a court may take judicial notice.")

28   (internal quotation marks and citations omitted).  SCG itself has

attached its patents as Exhibit A to its Complaint and also alleges them in the Complaint.  Furthermore, a court may properly take judicial notice of patents, as they are documents on the public record.  Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993).  SCG has also included images of the infringing products in its Complaint and relies on those images to make its allegations.  Thus, both the patents and the images are subject to judicial notice.

Here, the Court concludes that the patented design and claimed design are sufficiently distinct that it is clear that SCG cannot satisfy the ordinary observer test.  The four patents at issue all claim the "ornamental design for a transformable toy figure, as shown and described."  The drawings in the patents show what appears to be a plush teddy bear-like toy with tails.  The distinctive ornamental elements include three stalks, or antennae, that emerge from the toys' heads.  Each design's stalks are topped with a different design - a flower, a star, a heart, and a ball. That same stalk-topper shape is also imposed on the ears, paw pads, the chest, and the tip of the tail of each toy.  The exception to this is the ball-stalked toy, where there are circular swirls and dots in a pattern on the toy's ears, but there is no circular or ball shape on the toy's chest or paw pads.  Additionally the ball-stalked toy has a lion-like fringed tip instead of a ball tip.  The toys all have large, distinctive, heart-shaped ears.  They all have distinct, half-dome-shaped cheeks.  Finally, they each have a large, sack-like pouch attached to their backs.  It appears that the toy can be manipulated such that its body is "tucked" into the sack, with only the head of the toy showing.  The sacks of each

1  toy, with the exception of the ball-themed toy, all have the stalk-
2  topper shape on the front of the sack when the toy is in the
3  "tucked" position.

4      The accused designs share essentially no similarities with the
5  above-described patented designs. The accused designs are six
6  separate plush "Ball Pets" stuffed animals.  They include a puppy,
7  a purple bear, a rhino,[2] a red rover puppy, a blue kitty, and a
8  jolly green dragon.  Compl. at 12.  The "Ball Pets" do not have any
9  stalks or antennae on their heads, except that the rhino has a one
10 horn protruding from the center of its forehead and the dragon has
11 two small horns protruding from the sides of its head.  They all
12 have rounded or triangular ears of various sizes (generally
13 corresponding to the animal after which each is modeled).  Five of
14 them have shapes on their paw pads, but these shapes are paws - not
15 flowers, stars, hearts, or circles.  The sixth, the dragon, appears
16 to have no shapes on his paws.  There are no designs on the chests
17 of the toys.  They do not have hemispherical cheek shapes on their
18 faces.  They do not have tails.  They do not have sack-like
19 backpacks on their backs.  The "Ball Pets" do fold into balls, but
20 this markedly different from being folded into a sack or pouch.
21 Given these differences, it is clear that an ordinary observer
22 would not consider the designs substantially the same.

23     Furthermore, the "Ball Pets" products appear to the Court to
24 be more similar to the prior art than to SCG's asserted designs.
25 The prior art, like the "Ball Pets" toys, do not have pouches or

26

27      [2] The Complaint refers to this toy as "Pinky The Rhino," <u>see</u>
28 Compl. at 5, but Telebrands states that this toy is actually a
   unicorn.  Motion to Dismiss, Dkt. No. 20, at 9.

1  backpacks on their backs, and furthermore lack the stalks or

2  antennae that are one of the primary distinguishing characteristics

3  of SCG's designs.

4       SCG contends that it is inappropriate for the Court to

5  consider the alleged patents and accused products in evaluating a

6  motion to dismiss, and that the proper time to consider these items

7  would be at the summary judgment stage.  SCG refers the Court to a

8  case, <u>Deckers Outdoor Corporation v. J.C. Penney Company Inc.</u>, to

9  support their argument that the Court cannot compare the patented

10 design with the accused designs at the motion to dismiss stage.  45

11 F. Supp. 1181 (C.D. Cal. 2014).  However, as discussed above, the

12 Court may consider the patents and the images of the accused

13 products without converting the motion to dismiss into one for

14 summary judgment.  <u>Branch v. Tunnell</u>, 14 F.3d at 453-54.

15 Furthermore, <u>Deckers</u> can be distinguished, because in that case,

16 the court stated that "a comparison of the protected designs with

17 the accused products demonstrates a sufficient visual similarity to

18 at least render infringement of the [patent] plausible." <u>Deckers</u>,

19 45 F. Supp. at 1186.  Not so here.

20              2.  Trade Dress Claim

21      SCG asserts a second cause of action, for trade dress

22 infringement and dilution, against Defendants.  SCG alleges that

23 its has a trade dress for the "iconic" Popples trade dress design.

24 SCG describes its trade dress as including features such as "the

25 ability for the character to transform into a ball toy; the use of

26 brightly colored fur and exaggerated anatomical features; the use

27 of contrasting color pads on the feet, hands, and ears; and the

28 exclamatory posture when the toy is in the open position." Compl.

                              14

1   ¶ 18.   SCG further alleges that "[t]he unique look of Popples has

2   acquired secondary meaning among consumers and has become famous,

3   allowing consumers observing the products to identify that trade

4   dress as indicating a high quality product emanating from SCG."

5   Id.

6       Telebrands argues that Plaintiffs have not sufficiently pled

7   their trade dress claim because they have not fully pled the

8   claim's  three basic elements: (1) distinctiveness, (2) non-

9   functionality, and (3) likelihood of confusion.  Kendall-Jackson

10  Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir.

11  1998).  Specifically, Telebrands argues that SCG has failed to

12  adequately plead non-functionality.  Telebrands further argues that

13  SCG has failed to clearly articulate its trade dress.

14              a.  Non-Functionality

15      "Trade dress protection extends only to design features that

16  are nonfunctional."  Clicks Billiards, Inc. v. Sixshooters, Inc.,

17  251 F.3d 1252, 1258 (9th Cir. 2001).  A design feature is

18  functional "if the product feature is essential to the use or

19  purpose of the article or if it affects the cost or quality of the

20  article, that is, if exclusive use of the feature would put

21  competitors at a significant, non-reputation-related disadvantage."

22  Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 165

23  (1995).  However, multiple functional items may be combined into a

24  non-functional aesthetic whole.  Fuddruckers, Inc. v. Doc's B.R.

25  Others, Inc., 826 F.2d 837, 842 (9th Cir. 1987).

26      Telebrands argues that all of the features SCG identifies in

27  its Complaint are functional, and therefore not protectable under

28  trademark law.  It may be that the ability to transform into a ball

15

or the use of bright colors and exaggerated anatomical features are functional; however, this is a question of fact.  Because, ordinarily, the functionality inquiry is heavily fact-intensive, courts have held that this issue cannot be resolved at the motion to dismiss stage.  See Fuddruckers, 826 F.2d at 843 (stating that functionality is a question of fact); Morton v. Rank Am., Inc., 812 F. Supp. 1062, 1069 (C.D. Cal. 1993) (holding that question of functionality is a question of fact and cannot be decided as a matter of law at the motion to dismiss stage); Axis Imex, Inc. v. Sunset Bay Rattan, Inc., No. C 08-3931 RS, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009) (denying motion to dismiss trade dress claim where defendants argued the concept of nesting boxes was functional).

The cases Telebrands cites do not hold otherwise.  With two exceptions, they are all cases that were decided at the summary judgment stage or by a jury.  See, e.g. TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23 (2001) (appealing grant of summary judgment); Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., 668 F.3d 677 (9th Cir. 2012) (appealing a grant of summary judgment); Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911 (C.D. Cal. 2011) (order granting in part and denying in part cross-motions for summary judgment); The Jumpitz Corp. v. Viacom Int'l, Inc., No. 09CV1063-MMA WVG, 2010 WL 3238953 (S.D. Cal. Aug. 13, 2010) (order granting in part and denying in part plaintiff's motion for summary judgment); Apple Inc. v. Samsung Electronics Co., -- F.3d --, 2015 WL 2343543 (Fed. Cir. May 18, 2015) (appealing grant of judgment as a matter of law).  One case was an order denying a plaintiff's ex parte motion for a temporary restraining order.  See Zodiac Pool

1   Sys., Inc. v. Aquastar Pool Products, Inc., No. 13CV343-GPC WMC,

2   2013 WL 690616 (S.D. Cal. Feb. 22, 2013).  Finally, one case

3   dismissed without prejudice a trade dress counterclaim because it

4   failed to allege any facts that would explain "the nature, scope or

5   elements" making up the alleged trade dress.  Smith & Hawken, Ltd.

6   v. Gardendance, Inc., No. C04-1664 SBA, 2004 WL 2496163, at *3

7   (N.D. Cal. Nov. 5, 2004).

8                   *b.  Articulation of the Trade Dress*

9        Telebrands further argues that SCG's trade dress claim should

10  be dismissed because SCG has failed to adequately articulate its

11  trade dress.  Identifying the trade dress with particularity is

12  important given the general rule that "generic product designs are

13  unprotectable even upon showing of a secondary meaning."  Walker &

14  Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168, 1174

15  (N.D. Cal. 2007); see also Kendall-Jackson Winery, Ltd. v. E. & J.

16  Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998) (stating that

17  generic marks cannot satisfy the distinctiveness requirement).

18       The Court agrees that SCG must be more specific in identifying

19  what constitutes its claimed trade dress.  For example, the

20  elements of "brightly colored fur" and "exaggerated anatomical

21  features" should be more clearly described.  What colors, in what

22  parts of the toy?  Which anatomical features are exaggerated and

23  how?  What exactly constitutes a "ball toy"?  And how is the toy

24  posed in an "exclamatory posture"?  SCG must provide more detail

25  and describe the aspects of the toy it claims are protectable trade

26  dress with more particularity.

27            3.  Unfair Competition Claim

28

                              17

1       SCG's third claim, for unfair competition, arises from the
2   same alleged misconduct that underlies its first two claims.
3   Because the Court grants the motion to dismiss the first two
4   claims, it likewise dismisses SCG's unfair competition claim.
5   Additionally, the unfair competition claim refers to violation of
6   "the Lanham Act, California Business and Professions Code section
7   17200, and the common law."  Should SCG choose to amend its
8   Complaint, it should specify the specific statute(s) or doctrine(s)
9   under which it is asserting its unfair competition claim.  If
10  multiple, each should be a separate claim.

11  **IV.   CONCLUSION**

12      For the reasons stated herein, Defendant Khobani's motion to
13  dismiss is GRANTED.  Khubani is therefore dismissed from this case.
14  Defendant Telebrands' motion to dismiss is likewise GRANTED.
15  Because the Court concludes amendment would be futile, the patent
16  infringement claim is dismissed with prejudice.  The Complaint is
17  otherwise dismissed with leave to amend.  Any amended complaint
18  shall be filed within fourteen days of the date of this Order.

21  IT IS SO ORDERED.

24  Dated: August 3, 2015

                                     DEAN D. PREGERSON
25                                 United States District Judge